THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, v. SALVADOR VILLANUEVA, Defendant and Appellant.

No. 5569.   Argued March 5, 1935.—Decided November 15, 1935.

*R. Martínez Nadal* and *A. Reyes Delgado* for appellant.  *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.
██ Villanueva was convicted of murder in the second degree.  The first and second grounds of appeal are set forth in the brief as follows:

"1.—The District Court of Arecibo committed prejudicial error in instructing the jury as follows:

" ' (*a*) Gentlemen of the jury: From the evidence introduced by both sides the following theory has been established by the prosecution: that on September 23 of last year the defendant was engaged to a young lady by the name of Lydia Rosa Hernández whose parents were Julio Hernández and Teresa Martínez; that on that day the defendant called at the home of Lydia Rosa Hernández about 2 p. m. and talked with her in the parlor; that later on the defendant and Lydia were in the balcony and he invited her to go for a walk and, on her refusing, he told her: "You know that if whthin twenty days we are not married I am going to kill you"; that about 6 o'clock on that very afternoon Lydia returned to defendant, Salvador Villanueva, all his letters; that about 7 p. m. that day the defendant returned to the home of Lydia Rosa Hernández, inquired after her of her sister Angélica who told him that she was in the bath and when she came out he asked her whether that was true, and why she had returned his letters, and her answer was: "Everything is over"; that he then fired the first shot at her, the mother came out and, in the latter's presence, he fired the second shot; that the mother found her doubled up by the sofa and the defendant standing and the mother then pushed him toward the steps; that the second shot was fired by him at her back; that the defendant made the following statement in the presence of certain policemen: "Why so much investigation, I did it and I am going to jail satisfied."

" ' (*b*) In regard to the evidence for the defendant, one of the witnesses testified that he was going towards the ward known as Los Cocos to a rendezvous; that he was going on foot; that he knows the place where Julio Hernández lives; that on that night while passing casually he saw Salvador Villanueva and heard some harsh words like: "drunkard, scoundrel, my daughter is not going to marry you, get out of here"; that on hearing that he stopped;

that he heard that as coming from the house of Julio Hernández; that the words were "drunkard, scoundrel, you are not a man to marry my daughter"; that he paid attention then and within two minutes he heard two shots; that he did not see who.fired the shots; that he noticed that they pushed him, the defendant, insulting him, using the words mentioned by him and others that he does not dare to mention; that he approached the defendant while he was thus being pushed and he had already passed the railing and said to him; "what is the matter?", and he went out with him as far as the Bala de Bronce and engaged him in conversation until the arrival of Charriz; that he did not see anything in his hands when he was leaving the house; that he was being pushed out of the house by a lady and that the phrases preceded the shots. Other witnesses testified that once or twice a little boy, brother to the victim, was sent to the defendant at his garage to tell him from her to go there.'

"2.—The District Court of Arecibo committed a prejudicial error in addressing the jury, after its instructions on the law and the facts and having enumerated the verdicts which could be brought by the jury, as follows:

" 'Gentlemen of the Jury: As required by law you took two oaths, a preliminary one and a final one, before you took up your delicate and high social and judicial responsibilities. You were required by the first oath to tell the truth when examined in regard to your qualifications. You were required by the second, by appealing to your conscience as honest men, to try the case before you guided by the evidence and the dictates of your conscience. What is meant is that by the first oath you give your word of honor to comply with what is required of you by the second.

" 'For that reason, although it is unnecessary for me to tell you from this judicial curule, you must understand that these two oaths are intimately and inseparably coexistent and morally related, being, therefore, bound by your conscience and toward society to do your duty, irrespective of fears and prejudices urged by the imperative necessity of enforcing justice. For some reason the law requires that the panel be constituted by twelve men. That is symbolic. You constitute the noblest apostleship of civilized countries. You are the apostleship of popular justice where there is no room either for Peters who deny or for Judases who betray.

" 'Waves of passion may rise, flames of hatred may be kindled round the cases brought before our courts, but nothing of this may

or should reach you. The jury, like birds of powerful wings, must soar in regions so high and so pure as to make it impossible for those low and execrable passions to reach them and to allow such passions to pass beneath them like storm clouds belching fire beneath the powerful wings of the eagle and the condor.

" 'And I urge you, by appealing to your consciences, to decide this case, bearing in mind the solemnity of the oath taken, and relying exclusively on the evidence heard. I entreat you, in compliance with the word given, to deliberate on the case free from prejudices like the Islamite who leaves his sandals at the threshold of the temple so as not to defile the sacred precinct with the dust of the road.

" 'The court relies on you as just men and as Porto Ricans with a clear and high sense of duty, and both public justice and your country expect you to comply with that duty.' "

An exception to the first of these instructions was based on the contention that the judge in saying "by virtue of the evidence introduced it has been established by the district attorney" told the jury that the district attorney had proved the defendant guilty. Counsel reinforced this objection by pointing out that no such language had been used in summing up the evidence for the defense.

The prosecuting attorney *(Fiscal)* of this court relies on dictionary definitions of the words *"establecer"* and *"teoría."* He does not discuss the question as to how far a somewhat different meaning may have been given to the statement *"ha quedado establecido por parte del fiscal la siguiente teoría"* by the fact that it was preceded by the phrase *"de la evidencia aportada por ambas partes"* and followed by an abstract of the evidence adduced by the prosecution. Without going into the aspect of the matter it may be conceded, without holding, that the language used by the district judge is open to the construction placed thereon by appellant. If so construed it might well be argued that the exhortation complained of in the second assignment was tantamount to an instruction for a verdict of conviction. The question, however, is not so much as to whether or not the district court erred as it is whether or not the error, if any, was reversible

error. If the court had committed any other error clearly prejudicial to defendant, if the evidence as a whole had left open to him any loophole through which he might have escaped, if there had been any tangible basis for the theory of manslaughter, or if there had been any room for reasonable doubt, it would be difficult to avoid a reversal.

The two extracts from the judge's charge to the jury, however, were not delivered one immediately after the other as set forth in the assignment of error. They were the exordium and the peroration respectively of a charge which covers thirteen pages of the stenographic record. The summing up of the evidence for the defense did not follow immediately the reference to the district attorney's theory as it does in the assignment. The summing up of the evidence for the defense as set forth in the assignment is incomplete. Moreover, it is followed by a further summing up of other evidence for the prosecution beginning with the phrase "in regard to the evidence for the prosecution." The reference to the district attorney's theory was preceded by a statement of what was charged in the information. It was followed by an enumeration of the witnesses who had testified for the prosecution. After this, there was another paragraph concerning the death certificate, a cap left by defendant at the scene of the crime and the dress worn by Lydia Rosa. The contrast between the reference to the theory of the prosecuting attorney and the summing up of the evidence for the defense, separated as they are in the instructions as given to the jury, is not so striking as when they are placed immediately one after the other in the assignment. Following the summing up of the evidence and preceding the final exhortation are many typewritten pages of instructions concerning murder in the first and second degree, deliberation and malice, express and implied, the presumption of innocence, the right of the defendant not to take the stand, the burden of proof, the definition and doctrine of reasonable doubt, and

the exclusive province and duty of the jury in the weighing of the evidence. This point was made perfectly clear and it is not likely that a different result would have ensued in the event of a more felicitous choice of words in the reference to the theory of the prosecution. We cannot assume that the jury disregarded all intervening instructions and construed the final exhortation in connection with the reference to the theory of the district attorney as an urgent appeal on behalf of the prosecution or as a direction to return a verdict of guilty.

■ There is sometimes an atmosphere about a case at the time of the trial which is entirely lost on appeal. The judge who lives in the community, who had presided at the trial and who has heard the arguments of counsel, is in a better position than this court to measure the necessity of counteracting improper influences by impressing upon the jury the serious nature of their sworn obligation as jurors. While, as a general rule, oratorical flights should be left to counsel for the defense and for the prosecution, a mere exhortation as to the performance of a sworn duty is not a sufficient ground for a reversal.

■■ The third ground of appeal goes to the refusal of the district judge to give certain instructions as to manslaughter. If there had been any evidence on which to base a verdict of manslaughter, this refusal would have amounted to reversible error. In the absence of any such evidence, the question of manslaughter was not involved and the court did not err in refusing to charge the jury as requested. Nothing that Lydia Rosa's mother may have said to Villanueva, either before or after the shooting was adequate provocation. Beyond this, there was nothing in the evidence to support the theory that Villanueva had acted "in the heat of passion, upon any sudden and sufficient provocation." (Section 207, No. 2, Penal Code.) Hence, the court did not err in refusing to charge the jury as to voluntary manslaughter.

The brief for appellant fails to satisfy us that the district judge showed any such passion, prejudice, or partiality during the course of the trial as to require a reversal. This disposes of the fourth ground of appeal.

The judgment appealed from must be affirmed.